**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

UNITED STATES OF AMERICA

vs.

BRYAN WESLEY KRUEGER

CASE NO: 13-20242

DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE CHARLES E. BINDER

_____/

**ORDER REVOKING BOND**

The Petition for Action on Conditions of Pretrial Release alleges a number of potential bond violations. The Defendant, through counsel, opposes the Petition, essentially arguing that the Defendant can be released on modified conditions of bond. A hearing began on July 8, 2013, and continued on July 9, 2013.

At the outset, I note that 18 U.S.C. § 3142(b) requires that every bond include a condition that a Defendant not commit a state, federal or local crime while on release. 18 U.S.C. § 3148 sets forth the sanctions for bond violations, and establishes the procedure and standards for considering the revocation of bond. The section requires revocation of bond and detention of a defendant if there is probable cause to believe that the person committed a state, federal or local crime while on release, or if there is clear and convincing evidence that any other condition has been violated, and if there is no condition nor any combination of conditions that will reasonably secure the safety of the community. This latter determination is to be made under the standards set forth in 18 U.S.C. § 3142(g).

In addition, § 1348 establishes a rebuttable presumption in favor of detention where there is probable cause to believe that the defendant committed a state, federal or local crime while on release. With these standards as guidance, I review the evidence presented.

Were the evidence limited to a July 1, 2013, contact between the Defendant and the Michigan State Police, which the Government alleged was not reported to the supervising Pretrial Services officer, there would be little difficulty in concluding that the Government has failed to meet its burden.  However, the record contains considerable additional evidence.

The Defendant's supervising Pretrial Services officer testified during the hearing that the Defendant was convicted of domestic violence in December of 2012, arising out of an incident with the same victim.  The Pretrial Services officer testified that the Defendant was given a deferred sentence and placed on probation, one of the conditions of which allowed only peaceable contact with the victim, Ms. Bradbury.  The record also contains Government Exhibit 1, consisting of a police report describing an incident which took place on June 26, 2013.  Many important aspects were corroborated by a recording of a 15 minute telephone call between the Defendant and a Michigan State Police dispatcher that same night. The Defendant states that he has barricaded himself in a house, and there is a police stand-off.  On more than one occasion he states that he is suicidal, is frustrated by his failure to get medical care, and is seeking help.  He states he pepper-sprayed his girlfriend and that the matter escalated too far to take back.  He states he has guns in the house, but that it is not his intent to harm anybody except himself, and admits that he has violated conditions of his bond in this case.

Ms. Bradbury also testified, and during her testimony the Government presented lengthy excerpts of telephone conversations between the Defendant and Ms. Bradbury which were recorded while the Defendant was in custody.  Although on more than one occasion the Defendant encourages Ms. Bradbury to tell the truth, there are also unmistakably suggestions by the Defendant as to what she should say, including lengthy litanies detailing exactly how she should testify.  The two of them also appear to pre-rehearse her testimony.  During these

conversations the Defendant again admits pepper-spraying Ms. Bradbury. Defense counsel characterizes these conversations as arguments between the two, and while this is certainly in some respects accurate, counsel overlooks the fact that the Defendant admitted pepper-spraying Ms. Bradbury, a fact Ms. Bradbury herself confirmed at more than one point during her testimony.

The parties vigorously dispute whether there were actually any guns in the house during the June 26th incident, and whether Defendant violated the condition of bond prohibiting him from possessing firearms or dangerous weapons. As noted, Defendant has more than once admitted possessing and using pepper spray. Pepper spray has been considered a dangerous weapon, at least in the context of sentencing guideline calculations. *See United States v. Neill*, 166 F.3d 943, 949 (9th Cir.1999) (finding that pepper spray used by defendant was a "dangerous weapon," warranting an increase in sentencing); *Logan v. City of Pullman*, 392 F.Supp.2d 1246, 1261 (E.D.Wash.2005) (same), *Norris v. Lafler*, 2008 WL 786661, (E.D.Mich.,2008). Moreover, 18 U.S.C. § 930, which prohibits the possession of dangerous weapons in federal facilities defines, in pertinent part, this term as follows: "The term 'dangerous weapon' means a weapon, device, instrument, material, or substance, animate or inanimate, that is used for, or is readily capable of, causing death or serious bodily injury. . ." 18 U.S.C. § 930 (g)(2).

Accordingly, on the basis of the record before me, I conclude that:

1) by clear and convincing evidence, the Defendant violated the peaceable contact condition of his state court domestic violence probation order;

2) by clear and convincing evidence, the Defendant possessed a dangerous weapon in violation of his bond order in this case, and

3) that there is probable cause to believe that the Defendant violated state law by assaulting Ms. Bradbury on June 26, 2013.

This latter finding gives rise to a rebuttable presumption in favor of detention. I therefore next consider whether this presumption has been rebutted, and in the alternative, whether any conditions or combination of conditions will reasonably assure the safety of the community. Counsel for Defendant eloquently argues that the Defendant is mentally disturbed, is suicidal, and needs to continue outpatient treatment. However, counsel provides no specifics, and perhaps, he cannot. This avenue has already been attempted through the court's current bond order, and as the record convincingly shows, without success. While I can understand the Defendant's frustration, and while this case convincingly demonstrates the inadequacy of the criminal justice system to deal with issues of mental impairment, the law is clear: I must take those actions necessary to assure the safety of the community and, specifically, Ms. Bradbury.

While it is correct that detention is only permitted when "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community", I conclude that the Court is required under § 3142(g) to consider Defendant's mental condition and, under § 3142(g)(4), the Court must consider "the nature and seriousness of the danger to *any person* or the community." (emphasis added). *See U.S. v. George-Rodriguez*, 2013 WL 3246114 (D.Utah, 2013). I further conclude that the Bail Reform Act allows and may, in fact, require me to consider the potential of the Defendant committing suicide in the context of assessing his possibility of non-appearance. *See United States v. Wasendorf*, 2012 WL 4052834, *5 (N.D.Iowa, 2012) ("when considering a risk of nonappearance ... the Court may include the

risk that a defendant would commit suicide if released"). *See also United States v. Metz*, 2012 WL 6632501, at *4 (W.D.N.Y. Dec. 12, 2012).

Having in mind all these considerations, I conclude that the Defendant has not rebutted the presumption in favor of detention. I am further compelled to conclude that there are no conditions, nor any combination of conditions, that will reasonably assure the safety of the community, the safety of Ms. Bradbury or the safety of the Defendant himself. Accordingly, pursuant to 18 U.S.C. § 3148, the Defendant's bond is **REVOKED.**

Review of this Order is governed by 28 U.S.C. § 636(b)(1)(A) and E.D. Mich. LR 72.1(d)(1). Pursuant to Local Rule 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                              s/ *Charles E Binder*
                                              CHARLES E. BINDER
Dated: July 10, 2013                     United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Order was electronically filed this date, electronically served on Roy Kranz and William Street, and served by other electronic means on Pretrial Services and the U.S. Marshals Service.

Date: July 10, 2013                  By    s/*Jean L. Broucek*
                                            Case Manager to Magistrate Judge Binder